IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD., and LDO (CAYMAN) XVIII LTD.,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>*Defendant*. | C.A. No. 1:21-mc-0046-LPS |

**REPLY BRIEF IN SUPPORT OF
<u>PETRÓLEOS DE VENEZUELA, S.A.'S CROSS-MOTION TO DISMISS</u>**

OF COUNSEL:

Joseph D. Pizzurro
Julia B. Mosse
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
(212) 696-6000
jpizzurro@curtis.com
jmosse@curtis.com
kmeehan@curtis.com
jperla@curtis.com

February 4, 2022

HEYMAN ENERIO GATTUSO & HIRZEL LLP
Samuel T. Hirzel, II (#4415)
Aaron M. Nelson (#5941)
Jamie L. Brown (#5551)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
shirzel@hegh.law
anelson@hegh.law
jbrown@hegh.law

*Attorneys for Intervenor
Petróleos de Venezuela, S.A.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT .................................................................................................................................1

    I.     Plaintiffs Have Failed to Prove that PDVSA Is Venezuela's Alter Ego Under *Bancec* ...................................................................................................1

          A.     The Actions of the Unrecognized Maduro Regime Are Legally Irrelevant ..........................................................................................1

          B.     Plaintiffs Have Not Shown Extensive Control by the Interim Government ....................................................................................4

          C.     The "Pertinent Time" for the Alter Ego Analysis Is the Same as in *Crystallex* .........................................................................................6

    II.    Plaintiffs' Requested Relief Is "Too Speculative" to Satisfy Article III .................7

CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armstrong World Indus., Inc. v. Adams*,
  961 F.2d 405 (3d Cir. 1992) .................................................................................................... 7

*Arriba, Ltd. v. Petróelos Mexicanos*,
  962 F.2d 528 (5th Cir. 1992) .................................................................................................... 2

*Carney v. Adams*,
  141 S. Ct. 493 (2020) ................................................................................................................ 7

*Chalabi v. Hashemite Kingdom of Jordan*,
  543 F.3d 725 (D.C. Cir. 2008) ................................................................................................ 10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
  333 F. Supp. 3d 380 (D. Del. 2018) ...................................................................................... 2, 4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*,
  C.A. No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793 (D. Del. Jan. 14, 2021) ..................... 6

*Crystallex Int'l Corp. v. PDV Holding, Inc*,
  C.A. No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167 (D. Del. Dec. 12, 2019) ............... 3

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ..................................................................................................... 1, 2, 3, 5

*Flemming v. Thompson*,
  343 A.2d 599 (Del. 1975) ......................................................................................................... 9

*In re Lazy Days' RV Ctr. Inc.*,
  724 F.3d 418 (3d Cir. 2013) .................................................................................................. 7, 8

*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1998) ................................................................................................ 10

*In re Stanley's Asphalt Paving, Inc.*,
  353 B.R. 63 (Bankr. D. Del. 2006) ........................................................................................... 9

*Jiménez v. Palacios*,
  250 A.3d 814 (Del. Ch. 2019)
  *aff'd*, 237 A.3d 68 (Del. 2020) ......................................................................................... 1, 2, 4

*Khodara Envtl., Inc. v. Blakey*,
  376 F.3d 187 (3d Cir. 2004) ..................................................................................................... 8

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) .................................................................................................. 9, 10

*N.J. Peace Action v. Obama*,
    No. 08-2315 (JLL), 2009 U.S. Dist. LEXIS 43809 (D.N.J. May 15, 2009) .............................. 7

*Nat'l Ass'n of the Deaf v. Harvard Univ.*,
    No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121 (D. Mass. Feb. 9, 2016),
    *R. & R. adopted*, 2016 U.S. Dist. LEXIS 152667 (D. Mass. Nov. 2, 2016) ............................. 10

*Plains All Am. Pipeline L.P. v. Cook*,
    866 F.3d 534 (3d Cir. 2017) .................................................................................................. 7

*Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*,
    249 F.3d 175 (3d Cir. 2001) .................................................................................................. 7

*Sherwin-Williams Co. v. Cty. of Del.*,
    968 F.3d 264 (3d Cir. 2020) .................................................................................................. 8

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ................................................................................................................ 7

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) .............................................................................................................. 7

*Suburban Trails, Inc. v. N.J. Transit Corp.*,
    800 F.2d 361 (3d Cir. 1986) .................................................................................................. 8

*The Denny*,
    127 F.2d 404 (3d Cir. 1942) .................................................................................................. 3

*The Maret*,
    145 F.2d 431 (3d Cir. 1944) .................................................................................................. 3

*Travelers Ins. Co. v. Obusek*,
    72 F.3d 1148 (3d Cir. 1995) .................................................................................................. 7

*Wyatt, V.I., Inc. v. Gov't of V.I.*,
    385 F.3d 80 (3d Cir. 2004) .................................................................................................... 8

*Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) .................................................................................................................. 4

**CONSTITUTION AND REGULATIONS**

31 C.F.R. § 591.309 ..................................................................................................................... 9

U.S. Const. art. III ............................................................................................................. 7, 8, 10

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ................................................................................ 9

Merriam-Webster Online Dictionary ................................................................................... 9

Restatement (Third) of the Foreign Relations Law of the United States ........................................ 3

U.S. Dep't of Treasury, Other Sanctions Program
  Venezuela Sanctions, FAQ No. 808 (Dec. 9, 2019) .................................................................. 10

Intervenor PDVSA[1] respectfully submits this reply brief in support of its cross-motion to dismiss Plaintiffs' Attachment Motion.

## ARGUMENT

### I. Plaintiffs Have Failed to Prove that PDVSA Is Venezuela's Alter Ego Under *Bancec*

#### A. The Actions of the Unrecognized Maduro Regime Are Legally Irrelevant

The Executive's recognition of the Interim Government as the sole legitimate government of Venezuela, and its express nonrecognition of the Maduro regime, render the acts of the Maduro regime with respect to PDVSA in Venezuela legally irrelevant for purposes of the Court's analysis under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). *See* D.I. 22 at 11-17.  Plaintiffs contend that the Executive's recognition and nonrecognition are not dispositive and that the acts of an unrecognized regime within its own territory should be treated by the Court as relevant for purposes of its *Bancec* analysis, which allows the Court to consider the "totality of the circumstances."  D.I. 29 at 3-10. Plaintiffs are wrong.

*First*, the fact that *Bancec* is a totality of the circumstances test does not give U.S. courts *carte blanche* to disregard the purpose and effect of the Executive's recognition of the Interim Government and nonrecognition of the Maduro regime.  Indeed, as Plaintiffs admit, the *Bancec* inquiry "is directed at the relationship of one state (Venezuela) to one instrumentality (PDVSA)."  *Id.* at 9.  As a result of the Executive's recognition, in U.S. courts, there is only one "Venezuela":  the Interim Government.  *See Jiménez v. Palacios*, 250 A.3d 814, 830-31, 838 (Del. Ch. 2019) ("Guaidó is recognized, the National Assembly is legitimate, and neither Maduro nor the Constituent Assembly are legitimate parts of the Venezuelan government. . . .

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in PDVSA's Opening Brief [D.I. 22].  This reply brief addresses the FSIA and OFAC-related jurisdictional arguments in support of PDVSA's cross-motion to dismiss.  PDVSA expressly preserves all other arguments made in its Opening Brief.

The Executive's *de jure* recognition of the Guaidó government standing alone establishes statehood[.]"), *aff'd*, 237 A.3d 68 (Del. 2020).  To credit the actions of the Maduro regime as actions of "Venezuela" for purposes of the *Bancec* analysis would directly contravene the Executive's recognition of the Interim Government and nonrecognition of the Maduro regime.

*Second*, there is no corporate relationship between the Maduro regime and the PDVSA *ad hoc* board, which is the sole owner of the PDVH shares.  *See Jiménez*, 250 A.3d at 833-34.  The *Bancec* analysis focuses on the relationship between a foreign state and its instrumentality *that actually owns the assets* that plaintiff seeks to attach or execute upon.  It could not be otherwise, or a plaintiff would have no reason to seek to pierce the corporate veil between the foreign state and its instrumentality in the first instance.  Here, Plaintiffs seek to attach and execute their Judgment against the PDVH shares, property owned by the PDVSA *ad hoc* board.  Accordingly, the actions of the Maduro regime in Venezuela are no more relevant to the *Bancec* inquiry in this case than the actions of any third party that has no relationship to the PDVSA *ad hoc* board.  *See* D.I. 22 at 14 (citing *Arriba, Ltd. v. Petróelos Mexicanos*, 962 F.2d 528, 535 (5th Cir. 1992)).[2]

*Third*, Plaintiffs incorrectly rely upon *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 333 F. Supp. 3d 380 (D. Del. 2018) ("*Crystallex I*") for the notion that the Court is free to consider acts of the Maduro regime in Venezuela when performing its *Bancec* analysis.  D.I. 29 at 8.  Plaintiffs ignore two critical points:  At the time of *Crystallex I*, (1) the Maduro regime was the recognized government of Venezuela; and (2) the PDVSA *ad hoc* board did not exist.  Thus, as this Court previously stated, "'things are not at all the same' as they were when the

---

[2] Plaintiffs claim that PDVSA's citation to *Arriba* is "puzzling," because, according to Plaintiffs, "PDVSA seems to argue that, due to the Maduro regime's lack of recognition, the 'corporate veil' between PDVSA and Venezuela is 'non-existent' so cannot be pierced."  D.I. 29 at 9 n.3.  PDVSA's position is not that the corporate veil between PDVSA and Venezuela is non-existent.  To be sure, there is a corporate veil between the PDVSA *ad hoc* board and the Interim Government.  But the Maduro regime is not Venezuela and so there is no corporate relationship between the Maduro regime and the PDVSA *ad hoc* board, the sole owner of the PDVH shares.

2

Court made its findings in [] *Crystallex* [*I*] . . . 'The relevant portion of PDVSA, which is the property in the U.S., is under different control under a new legal regime . . . recognized by the U.S." *Crystallex Int'l Corp. v. PDV Holding, Inc.*, C.A. No. 15-cv-1082-LPS, 2019 U.S. Dist. LEXIS 214167, at *20 (D. Del. Dec. 12, 2019); *see also* Statement of Interest of the United States, *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, C.A. No. 17-mc-151-LPS, D.I. 212 at 8 (D. Del. Jul. 16, 2020) ("[T]he U.S. government's recognition of the Guaidó government constitutes a substantial and material change in circumstances that is itself sufficient to merit reconsideration of this Court's earlier alter ego determination[.]").

*Fourth*, Plaintiffs attack a strawman by arguing that PDVSA's position is that acts of an unrecognized regime taken within its own territory can never be relevant in any context. D.I. 29 at 5. PDVSA's position is that such actions are wholly irrelevant to *the Bancec analysis* in *this case*, which focuses on the relationship between Venezuela (the Interim Government) and its instrumentality (PDVSA, as managed by the *ad hoc* board) for purposes of determining rights in PDVSA's U.S. property. D.I. 22 at 11-17. For this reason, Plaintiffs' continued reliance upon the Restatement (Third) of the Foreign Relations Law of the United States § 205, *The Denny*, 127 F.2d 404 (3d Cir. 1942), and cases in which courts may have considered or given effect to acts of an unrecognized government within its territory pertaining to "purely local, private or domestic affairs" in a different context are simply inapposite. D.I. 29 at 5-7.

*Fifth*, Plaintiffs incorrectly downplay the significance of *The Maret*, 145 F.2d 431 (3d Cir. 1944). Plaintiffs claim that *The Maret* "is only one more authority for a proposition that Plaintiffs have already agreed with, namely, that courts cannot recognize [an unrecognized] regime's assertion of rights in state assets." D.I. 29 at 7 (alteration in original) (internal quotation marks omitted). *The Maret* cannot be so narrowly construed. It stands for the

3

proposition that the political question doctrine bars U.S. courts from considering the acts and decrees of an unrecognized government to "determine rights in property, subject to the jurisdiction of the examining court," because "to do so would nullify the effect of nonrecognition by our Executive."  145 F.2d at 441-42.  That is precisely what Plaintiffs ask the Court to do here.  They ask the Court to consider the acts of the unrecognized Maduro regime and attribute them to Venezuela to determine "whether PDVSA's assets [the PDVH shares] are, in effect, *Venezuela's* assets[.]"  *Crystallex I*, 333 F. Supp. 3d at 393 (emphasis in original).

*Finally*, Plaintiffs suggest that the Court is free to consider *both* the acts of the Maduro regime *and* the acts of the Interim Government when performing its *Bancec* analysis.  D.I. 29 at 10.  That is a non-starter.  As the court in *Jiménez* explained, "recognition of one sovereign authority must exclude others, particularly when those other bodies have taken positions contrary to the recognized sovereign." 250 A.3d at 839; *see also Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015) ("Recognition is a topic on which the Nation must speak . . . with one voice." (internal quotation marks omitted)).

### B.   Plaintiffs Have Not Shown Extensive Control by the Interim Government

Plaintiffs concede, as they must, that "if one looks solely to the Guaidó government for the *Bancec* inquiry, not all facts [relied upon to establish extensive control of PDVSA in *Crystallex I*] remain the same." D.I. 29 at 15.  Indeed, many of the salient facts that this Court and the Third Circuit relied upon in *Crystallex* no longer hold true.  *See* D.I. 22 at 21-29.  Plaintiffs attempt to distract from these materially changed circumstances, and their failure of proof, by emphasizing three "facts" that they claim "stand out in distinguishing PDVSA from a typical instrumentality."  D.I. 29 at 10.  Plaintiffs' "facts" do no such thing.

*Restructuring plan*.  Plaintiffs argue that the Interim Government's aspirational statement of a plan to globally resolve the Republic's and PDVSA's debts in an orderly fashion evidences

4

that the Interim Government exercises extensive control over PDVSA.  *Id.* at 11-12.  As Mr. Medina, Chairman of the PDVSA *ad hoc* board, explained in response to the same argument by OIEG and Huntington Ingalls, "[t]hat is not true. . . . The Interim Government's commitment to a global restructuring of Venezuela's and PDVSA's legacy debts . . . simply reflects a desire – shared by both the Interim Government and the PDVSA ad hoc board – to put in place a coordinated and orderly process for resolving legacy claims by creditors of the Republic and PDVSA, which also makes practical sense given that the Interim Government is concerned about the creditworthiness of its instrumentalities and the fact that creditors of the Republic and PDVSA have attempted to satisfy their obligations by seizing and/or selling the assets of PDVSA or of its direct or indirect subsidiaries."  D.I. 28, Medina Decl. ¶ 15.  Plaintiffs claim that the Interim Government's global restructuring plan is "fundamentally different" from those that other courts considered insufficient to demonstrate an alter ego relationship (*see* D.I. 22 at 26-27), because "it would have the state and its instrumentality link arms and seek restructuring with one voice." D.I. 29 at 12.  Plaintiffs do not allege that the Interim Government forced PDVSA to participate in the restructuring plan or that PDVSA's assets will be used to satisfy the Republic's debts.  The fact that the Interim Government and PDVSA share the desire to resolve each of their legacy debts in an orderly fashion does not evidence extensive control.

*Importance of PDVSA.*  Plaintiffs argue that "Venezuela is the real beneficiary of PDVSA's conduct" because of the unremarkable proposition that the preservation of PDVSA and its U.S. subsidiaries is of great importance to the Interim Government.  D.I. 29 at 12-13.  But every parent entity has an interest in the preservation of its subsidiaries' assets; this is true in every corporate relationship and certainly does not suggest an alter ego relationship.  Moreover, the Third Circuit found this *Bancec* factor satisfied because Venezuela used PDVSA to advance

5

the state's sovereign interests *to the detriment of PDVSA's business interests*.  D.I. 22 at 28.  Plaintiffs make no such allegations.  *See id.* at 28-29.[3]

*Transaction approval requirements.*  Plaintiffs argue that Article 36 of the Transition Statute, an October 2019 National Assembly Resolution approving the use of PDVSA's own funds for the defense of its own assets, and PDVSA's position that the 2020 bonds are invalid demonstrate the Republic's extensive control over PDVSA's daily operations.  Plaintiffs' reliance upon these allegations is misplaced.  D.I. 22 at 24-26.  They reflect the Interim Government acting as regulator in the context of restoring PDVSA's commercial autonomy and ending decades of corruption in the face of *extraordinary* threats to PDVSA's core foreign asset, not interference in daily operations.  *Id.*  As Mr. Medina explained, the Interim Government has not interfered in PDVSA's commercial affairs, it has not imposed any material commitments on PDVSA, and it does not order or direct the *ad hoc* board to pursue specific business policies or transactions.  D.I. 28, Medina Decl. ¶¶ 11(c)-(d), 18.

        **C.**     **The "Pertinent Time" for the Alter Ego Analysis Is the Same as in *Crystallex***

The Court held in *Crystallex* that the "pertinent time" for the alter ego analysis is "the period between the filing of the motion seeking a writ of attachment [here, November 22, 2021] and the subsequent issuance and service of that writ."  *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, C.A. No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021).  There is nothing unique about this case that merits changing the "pertinent time" for the alter ego analysis from that already established by the Court for similarly situated creditors of the Republic in other cases.

---

[3] Plaintiffs again cite to CITGO's Simón Bolivar Foundation's stated support of social welfare programs for Venezuelans as purported evidence of the Interim Government's use of PDVSA's assets.  D.I. 29 at 14.  CITGO's foundation is not a PDVSA asset and Plaintiffs offer no evidence that the Interim Government has forced CITGO to use its foundation in any particular way.  D.I. 22 at 28 n.9.  CITGO, like any other corporation, is free to support charity programs of its choosing.

## II.     Plaintiffs' Requested Relief Is "Too Speculative" to Satisfy Article III

Plaintiffs argue that the requested relief (an order authorizing a writ conditioned on OFAC approval) does not run afoul of the OFAC regulations because it is "too speculative to amount to a property interest" (D.I. 29 at 17; *see id*. at 2), while at the same time arguing that a decision in their favor would nevertheless sufficiently affect the parties' rights for purposes of satisfying Article III of the U.S. Constitution.  *Id.* at 21-22.  Plaintiffs cannot have it both ways.

Article III, Section 2, "stands as a direct prohibition on the issuance of advisory opinions." *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 249 F.3d 175, 182 (3d Cir. 2001) (quoting *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir. 1995)).  "Put another way, [federal courts] 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'" *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  Article III "must be met regardless of the type of relief sought[.]" *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

Standing and ripeness are two of the interrelated doctrines underpinning Article III. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017).  For example, to have standing, a plaintiff must have suffered an injury that "is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (internal quotation marks omitted); *N.J. Peace Action v. Obama*, No. 08-2315 (JLL), 2009 U.S. Dist. LEXIS 43809, at *6 (D.N.J. May 15, 2009).  A plaintiff thus lacks standing when its requested relief is contingent on the actions of a third party.  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43-44 (1976).

Similarly, "[a] dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Sherwin-*

7

*Williams Co. v. Cty. of Del.*, 968 F.3d 264, 272 (3d Cir. 2020) (quoting *Wyatt, V.I., Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004)); *see also Suburban Trails, Inc. v. N.J. Transit Corp.*, 800 F.2d 361, 369 (3d Cir. 1986). Thus, standing and ripeness are not met when a court is asked to make legal determinations or findings of fact that depend on the discretionary actions of a third party for their legal effect. *See Sherwin-Williams*, 968 F.3d at 272.

Plaintiffs concede that the Court's ability to grant them the actual relief requested (a writ creating a lien on the PDVH shares) "depends entirely upon OFAC's discretion." D.I. 29 at 17. In other words, unless and until OFAC issues a license, any order issued by this Court answering the questions raised in this case would not redress Plaintiffs' injury and would be nothing more than an opinion "advising what the law would be upon a hypothetical state of facts.'" *In re Lazy Days' RV Ctr.*, 724 F.3d at 421.[4] Still, Plaintiffs argue that Article III poses no barrier to granting them this speculative relief because there are other factors to be considered. D.I. 29 at 21-22. Those factors hurt rather than help Plaintiffs' case.

Most importantly, Plaintiffs' invented concept of a "writ conditioned on OFAC approval" has no practical value at this time because there is nothing Plaintiffs can do with it in the absence of a license. Plaintiffs speculate that a conditional writ would "permit [them] to participate in the *Crystallex* sale process." *Id.* at 22. Putting aside whether they could join the sales process without a license (they cannot), the notion that a conditional writ would give them some sort of right or interest to participate in the sale of PDVSA's property undermines the premise of Plaintiffs' argument that an order conditioned on OFAC approval does not create a prohibited contingent right or interest in that property. There is no legal basis for Plaintiffs to "participate"

---

[4] Plaintiffs are wrong to rely on *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004). There, "it was undisputed that, if the plaintiff received a favorable ruling, it would help develop the landfill," *i.e.*, the ultimate relief sought. *Sherwin-Williams*, 968 F.3d at 270. There is no similar certainty here because, even if Plaintiffs receive a favorable ruling, there is no guarantee that they will obtain a license authorizing the writ.

8

in the sale absent such a right or interest, as the Court cannot sell PDVSA's property to satisfy Plaintiffs' Judgment unless Plaintiffs have a right or interest enforceable against that property under applicable law. Thus, there is no practical reason for Plaintiffs to seek a conditional writ if they did not believe that it would give them a contingent right or interest in the PDVH shares. Indeed, under Delaware law, the issuance and service (or levying) of a writ of attachment by the sheriff (or the U.S. Marshals) creates an enforceable lien on the attached property. *See In re Stanley's Asphalt Paving, Inc.*, 353 B.R. 63, 65 (Bankr. D. Del. 2006); *Flemming v. Thompson*, 343 A.2d 599, 600 (Del. 1975). An order authorizing a writ that would automatically spring into effect upon OFAC approval is a contingent lien (a right or interest) in blocked property.

Plaintiffs concede, as they must, that the creation of a writ dependent or "conditioned on" OFAC approval is barred by the plain meaning of the applicable OFAC regulations. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019); *Contingent*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("dependent on something that might or might not happen in the future"); *Contingent*, MERRIAM-WEBSTER ONLINE DICTIONARY ("dependent on or conditioned by something else"). Plaintiffs' arguments for why the Court should depart from the regulations' plain meaning are too clever by half. Applying for an OFAC license before obtaining a conditional right or interest in blocked property is not prohibited by the regulations, but that is different from securing that same right or interest subject only to OFAC approval, which is prohibited. The regulations prohibit the creation of *property* interests, not actions taken with a subjective "interest" (read: desire) to complete a transaction in property subject to sanctions. And Plaintiffs' reliance on the ejusdem generis canon is defeated by the simple fact that the language to which they point is attempting to describe types of property, not types of contingencies. *See* 31 C.F.R. § 591.309.

9

OFAC's authoritative guidance confirms the plain meaning of the regulatory text.  For instance, FAQ 808 makes clear that a license is required for the creation of "*any* legal or equitable interests (including *contingent or inchoate interests*) in blocked property" and there is nothing in FAQ 808 or the regulations themselves that limits the meaning of the term "contingent" or "inchoate" to exclude the contingency of OFAC approval.  OFAC FAQ No. 808 (emphases added); *see also* D.I. 29 at 19 (recognizing that OFAC has previously taken the position that "'contingent' could in fact mean 'contingent on OFAC's own approval'").  To the extent this Court believes those regulations are "genuinely ambiguous," OFAC's "fair and considered" interpretation in FAQ 808 is entitled to "controlling weight."  *Kisor*, 139 S. Ct. at 2415-17; *see also Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-cv-30023-MGM, 2016 U.S. Dist. LEXIS 120121, at *27-30 (D. Mass. Feb. 9, 2016), *R. & R. adopted*, 2016 U.S. Dist. LEXIS 152667 (D. Mass. Nov. 2, 2016).[5]

In sum, either an order conditioned on OFAC approval affects the rights of the parties in the PDVH shares sufficient to justify Plaintiffs' participation in the *Crystallex* sales process (at the very least), in which case it would be barred and invalid under the OFAC regulations, or it does not affect the rights of the parties absent the issuance of an OFAC license, in which case the Court would be issuing an impermissible advisory opinion and the case should thus be dismissed for lack of jurisdiction under Article III.[6]  In either instance, no such order should issue.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in PDVSA's Opening Brief, this Court should dismiss the Attachment Motion and deny Plaintiffs' requested relief.

---

[5] None of the cases cited by Plaintiffs are to the contrary, as none of them hold that the purported creation of a right or interest subject to OFAC approval is not a "contingent" interest within the meaning of the regulations.

[6] The Court may dispose of the Attachment Motion on threshold "non-merits grounds" before reaching FSIA jurisdiction, but only if it is satisfied that it has Article III jurisdiction.  *See Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728-29 (D.C. Cir. 2008); *In re Papandreou*, 139 F.3d 247, 254-55 (D.C. Cir. 1998).

|  |  |
|---|---|
| | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| OF COUNSEL: | */s/ Samuel T. Hirzel, II* |
| | Samuel T. Hirzel, II (#4415) |
| Joseph D. Pizzurro | Aaron M. Nelson (#5941) |
| Julia B. Mosse | Jamie L. Brown (#5551) |
| Kevin A. Meehan | 300 Delaware Avenue, Suite 200 |
| Juan O. Perla | Wilmington, DE 19801 |
| CURTIS, MALLET-PREVOST, | (302) 472-7300 |
| COLT & MOSLE LLP | shirzel@hegh.law |
| 101 Park Avenue | anelson@hegh.law |
| New York, NY 10178 | jbrown@hegh.law |
| (212) 696-6000 | |
| jpizzurro@curtis.com | *Attorneys for Intervenor Petróleos de Venezuela, S.A.* |
| jmosse@curtis.com | |
| kmeehan@curtis.com | |
| jperla@curtis.com | |

Dated: February 4, 2022