# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NORTHROP GRUMMAN SHIP SYSTEMS, INC., | : | |
| *Plaintiff*, | : | C.A. No. 1:20-mc-00257-LPS |
| v. | : | |
| THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, | : | |
| *Defendant*. | : | |
| OI EUROPEAN GROUP B.V., | : | |
| *Plaintiff*, | : | C.A. No. 1:19-mc-00290-LPS |
| v. | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| *Defendant*. | : | |
| ACL1 INVESTMENTS LTD., *et al.*, | : | |
| *Plaintiffs*, | : | C.A. No. 1:21-mc-00046-LPS |
| v. | : | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | : | |
| *Defendant*. | : | |

|  |  |
|---|---|
| RUSORO MINING LIMITED,  :  :  :  *Plaintiff*,  :  :  v.  :  :  BOLIVARIAN REPUBLIC OF VENEZUELA,  :  :  *Defendant*.  :  : | C.A. No. 1:21-mc-00481-LPS |

## PROPOSED FINDING OF FACTS OF <u>INTERVENOR PETRÓLEOS DE VENEZUELA, S.A.</u>

Pursuant to the Court's Order entered in the above-captioned proceedings on October 24, 2022, Intervenor Petróleos de Venezuela, S.A. ("<u>PDVSA</u>") submits these Proposed Findings of Fact. PDVSA makes this submission without prejudice to the fact that PDVSA has no burden to prove any facts whatsoever in the above-captioned proceedings. The plaintiffs alone bear the burden of rebutting the strong presumption of separateness to which PDVSA and its shareholder, the Bolivarian Republic of Venezuela (the "<u>Republic</u>"), are entitled under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983), *see Crystallex Int'l Corp. v. Bolivarian Rep. of Venez.*, 932 F.3d 126, 146 (3d Cir. 2019); *see also Arch Trading Corp. v. Republic of Ecuador,* 839 F.3d 193, 200-01 (2d Cir. 2016), and of proving "fraud or similar injustice" under Delaware law necessary to permit the attachment and execution of corporate shares held in the name of a party other than the judgment debtor, *see Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183–84 (Del. Ch. 1999); *see also Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959). PDVSA further expressly reserves all rights, including its rights to all immunities and protections to which it is entitled under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et*

*seq.* Notwithstanding the foregoing, PDVSA asserts that the following material facts have been proven or are otherwise uncontested:

1. PDVSA was incorporated in 1975 as a *sociedad anónima* having its own legal personality distinct from its shareholder, the Bolivarian Republic of Venezuela (the "Republic"). Brewer-Carías Decl. ¶¶ 21-22.[1]

2. At the time of PDVSA's creation, there existed a "system of formal controls … which would ensure a proper separation between PDVSA … and Venezuela." Gómez Reply ¶ 24.[2] From its creation in 1975 until approximately 2003, PDVSA was an independent economically-driven company that operated autonomously from the Republic without political interference. Gómez Report ¶ 10;[3] Brewer-Carías Decl. ¶ 23; *Crystallex Int'l Corp. v. Bolivarian Rep. of Venez. ("Crystallex I"),* 333 F. Supp. 3d 380, 412 (D. Del. 2018) (discussing the Declaration of Dr. Roberto Rigobon submitted by Crystallex).[4]

3. Plaintiff Northrop Grumman Ship Systems, Inc., now known as Huntington Ingalls Incorporated ("Huntington Ingalls") holds a judgment entered on an arbitration award against Venezuela's Ministry of Defense – not PDVSA. The underlying dispute arises out of the Ministry of Defense's breach of a 1997 contract to repair two warships. *Northrop Grumman Ship Sys. v. Ministry of Def. of the Republic of Venezuela*, No. 1:02cv785-HSO-RHW, 2020 U.S.

---

[1] As used herein, the "Brewer-Carías Decl." shall mean the Expert Declaration of Allan R. Brewer-Carías, dated April 2, 2021, submitted in *e.g., Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, [D.I. 33] (D. Del. Apr. 2, 2021).

[2] As used herein, the "Gómez Reply" shall mean the Reply Export Report of Manuel A. Gómez, dated April 16, 2021, submitted in *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, [D.I. 39] (D. Del. Apr. 16, 2021).

[3] As used herein, the "Gómez Report" shall mean the Export Report of Manuel A. Gómez, dated February 19, 2021. *See, e.g., Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, [D.I. 39] (D. Del. Apr. 16, 2021).

[4] The Declaration of Dr. Roberto Rigobon, dated August 14, 2017, was appended as Exhibit 47 to the Declaration Keane A. Barger, dated November 21, 2021, *ACL1 Investments Ltd. v. Bolivarian Republic of Venezuela*, No. 1:21-mc-0046-LPS, [D.I. 5-1 at ECF 422] (D. Del.).

Dist. LEXIS 56586, at *3 (S.D. Miss. Mar. 31, 2020).  The underlying events giving rise to Huntington Ingalls' arbitration claims (*i.e.* the execution, performance, and breach of the 1997 contract) occurred at a time when PDVSA was independent from the Republic and before the tightening of political control by the former Chávez and Maduro regimes.  *E.g.* Gómez Report ¶ 10.  PDVSA was not a party to the underlying 1997 contract and was not otherwise involved in the performance and breach of the 1997 contract.  PDVSA was not a party to the underlying arbitration or litigation resulting in Huntington Ingalls' arbitral award and judgment.

4. Huntington Ingalls filed a motion for a writ of attachment on September 15, 2020 and thereafter filed an amended motion for a writ of attachment on February 19, 2021.  Huntington Ingalls Amended Attachment Motion, *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, [D.I. 25] (D. Del. Feb. 19, 2021); Huntington Ingalls Attachment Motion, *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, [D.I. 3] (D. Del. Sept., 15, 2020).  Both of Huntington Ingalls' motions were thus filed after the Interim Government put an end to the political controls asserted by the former Chávez and Maduro regimes and restored PDVSA's independence.

5. Plaintiff O.I. European Group B.V. ("OIEG") holds a judgment entered on an arbitral award against the Republic – not PDVSA.  The underlying dispute arises out of the Chávez regime's expropriation of the assets of OIEG's Venezuelan subsidiaries, which manufactured glass containers for food companies in Venezuela.  OIEG Award ¶¶ 86-87, 108.[5]

---

[5] As used herein, the "OIEG Award" shall mean the arbitral award underlying OIEG's judgment that was entered in *OI European Group B.V. v. Bolivarian Republic of Venezuela,* ICSID Case No. ARB/11/25 (Mar. 10, 2015).  A translated copy of the OIEG Award was appended as Exhibit 1 to the Declaration of Kevin A. Meehan, dated April 2, 2021, *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, [D.I. 67-1 at ECF 1-231] (D. Del. Apr. 2, 2021).

Those assets were transferred to Venezuela's Ministry of Science, Technology and Intermediate Industries (the "Ministry of Science") – not PDVSA. *Id.* ¶¶ 111-13. The expropriated assets were eventually transferred to Venezolana del Vidrio, C.A., a company owned by the Ministry of Science. *Id.* ¶ 90. PDVSA had no involvement with the expropriation or the expropriated property and had no dealings with OIEG or its Venezuelan subsidiaries. PDVSA was not a party to the underlying arbitration or the litigation resulting in OIEG's arbitral award and judgment.

6. OIEG filed its attachment motion on November 4, 2019. OIEG Attachment Motion, *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, [D.I. 2] (D. Del. Nov. 4, 2019). OIEG's attachment motion was thus filed after the Interim Government put an end to the political controls asserted by the former Chávez and Maduro regimes and restored PDVSA's independence.

7. Plaintiff Rusoro Mining Limited ("Rusoro") holds a judgment on an arbitral award against the Republic – not PDVSA. The underlying dispute arises out of the Chávez regime's expropriation of Rusoro's interests in mining concessions in Venezuela. PDVSA was not a party to the underlying arbitration or the litigation resulting in Rusoro's arbitral award or judgment.

8. Rusoro filed its attachment motion on February 9, 2022. Rusoro Attachment Motion, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 1:21-mc-0481-LPS, [D.I. 2] (D. Del. Feb. 22, 2021). Rusoro's attachment motion was thus filed after the Interim Government put an end to the political controls asserted by the former Chávez and Maduro regimes and restored PDVSA's independence.

9. Plaintiffs ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd. (collectively, "ACL") hold a judgment against the Republic – not PDVSA. The

underlying dispute arose out of the Republic's default on certain bonds issued by the Republic. PDVSA is not an obligor on the bonds and had no involvement in the Republic's issuance and default on the bonds. PDVSA was not a party to the underlying litigation resulting in ACL's judgment.

10. ACL filed its attachment motion on November 22, 2021. ACL Attachment Motion, *ACL1 Investments Ltd. v. Bolivarian Republic of Venezuela*, No. 1:21-mc-0046-LPS, [D.I. 2] (D. Del. Nov. 22, 2021). ACL's attachment motion was thus filed after the Interim Government put an end to the political controls asserted by the former Chávez and Maduro regimes and restored PDVSA's independence.

11. On January 14, 2021, this Court entered a decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.* No. 17-mc-151-LPS, 2021 U.S. Dist. LEXIS 7793, at *18 (D. Del. Jan. 14, 2021) stating that "the pertinent time" for purposes of an alter ego analysis is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ."

12. The Republic has not abused PDVSA's corporate form to perpetrate a fraud or similar injustice resulting in harm to Huntington Ingalls, OIEG, Rusoro, or ACL.

13. In January 2019, the National Assembly named Juan Guaidó as Interim President of Venezuela pursuant to Article 233 of the Venezuelan Constitution. Brewer-Carías Decl. ¶ 26. On January 23, 2019, President Donald J. Trump issued a statement officially recognizing Mr. Guaidó as Interim President of Venezuela and derecognized the regime of former President Nicolás Maduro. Meehan Decl., Exs. 3-4;[6] Brewer-Carías Decl. ¶ 27 & n.19. As a result, since

---

[6] As used herein, the "Meehan Decl." shall mean the Declaration of Kevin A. Meehan and the Exhibits thereto, dated April 2, 2021, *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, [D.I. 67 & 67-1] (D. Del. Apr. 2, 2021).

January 2019, the Republic has been represented by Venezuela's National Assembly and the government of Interim President Juan Guaidó (the "Interim Government"). The Executive Branch under the administration of President Joseph R. Biden, Jr. continues to recognize only the Interim Government as the Republic. Meehan Decl., Exs. 5-7.

14. Plaintiff OIEG has admitted that "[o]nly the Executive Branch can recognize a foreign government. The Executive has recognized the Guiado government." Meehan Decl., Ex. 13, at 1.

15. The Executive's recognition of the Interim Government and derecognition of the Maduro regime are binding on this Court. Therefore, the fact that the Republic is represented by the Interim Government and the fact that the Interim Government exclusively holds all rights and interests to the Republic's property in the United States are facts that cannot be disputed by any parties in the above-captioned actions or second-guessed by U.S. courts. *See Zivotofsky v. Kerry*, 576 U.S. 1, 18-19 (2015); *Pfizer v. Government of India*, 434 U.S. 308, 319-20 (1978); *United States v. Pink,* 315 U.S. 203, 229 (1942); *Guaranty Tr. Co. v. United States*, 304 U.S. 126, 137-38 (1938); *United States v. Belmont*, 301 U.S. 324, 328-30 (1937); *see also Nat'l Union Fire Ins. Co. v. Republic of China*, 254 F.2d 177, 186 (4th Cir. 1958); *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944).

16. The Republic is PDVSA's sole shareholder. Since PDVSA's creation, the Republic thus has possessed the legal right to appoint PDVSA's directors, just as with any other corporation, whose directors ordinarily are appointed by the corporation's shareholders in accordance with applicable law and the corporation's constituting documents.

17. Pursuant to, and in full conformance with, his authority under the Venezuelan Constitution and the February 2019 Statute to Govern a Transition to Democracy to Reestablish

the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela" (the "Transition Statute"), Interim President Guaidó has exercised the Republic's shareholder rights by appointing the members of PDVSA's *ad hoc* Board.  Brewer-Carías Decl. ¶ 36.  In accordance with the Transition Statute, PDVSA's *ad hoc* Board has acted to ensure the protection of PDVSA's assets in the United States and has exercised PDVSA's rights in those U.S. assets.  Brewer-Carías Decl. ¶¶ 31-32; Medina Decl. ¶ 6; Pacheco Decl. ¶ 10.[7]

18.     PDVSA's *ad hoc* Board is composed of international petroleum industry professionals.  Medina Decl. ¶ 5.[8]  There are no government officials on the *ad hoc* Board, Medina Decl. ¶ 11(e); Pacheco Decl. ¶ 12(e).

19.     The Interim Government has not interfered with the management of PDVSA or its commercial operations.  Medina Decl. ¶ 11; Pacheco Decl. ¶ 12.

20.     PDVSA is the sole shareholder of PDV Holding, Inc. ("PDVH"), a Delaware corporation.  Since February 2019, PDVSA's *ad hoc* Board has exercised PDVSA's shareholder rights to appoint PDVH's directors.  Medina Decl. ¶ 2(d); *Jiménez v. Palacios,* No. 2019-0490-KSJM, 2019 Del. Ch. LEXIS 288, at *13 (Del. Ch. Aug. 2, 2019), aff'd 237 A.3d 68 (Del. 2020).

21.     PDVH is the sole shareholder of CITGO Holding, Inc. ("CITGO Holding"), a Delaware corporation.  Since February 2019, PDVH's directors have exercised PDVH's shareholder rights to appoint CITGO Holding's directors.  Medina Decl. ¶ 2(d); *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13.

---

[7] As used herein, the "Pacheco Decl." shall mean the Declaration of Luis A. Pacheco, dated June 17, 2020, which was appended as Exhibit A to the Medina Declaration, *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, [D.I. 68-1] (D. Del. Apr. 2, 2021).

[8] As used herein, the "Medina Decl." shall mean the Declaration of Horacio Francisco Medina Herrera, dated April 1, 2021, *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, [D.I. 68] (D. Del. Apr. 2, 2021).

22. CITGO Holding is the sole shareholder of CITGO Petroleum, Inc. ("CITGO Petroleum", and together with PDVH and CITGO Holding, "PDVSA's U.S. Subsidiaries"), a Delaware corporation. Since February 2019, CITGO Holding's directors have exercised CITGO Holding's shareholder rights to appoint CITGO Petroleum's directors. Medina Decl. ¶ 2(d); *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13.

23. There are no government officials on the boards of PDVSA's U.S. Subsidiaries, and the Interim Government has not interfered with the management or operations of those U.S. Subsidiaries. Medina Decl. ¶ 11; Pacheco Decl. ¶ 12.

24. Through the issuance of the Transitional Statute and Presidential Decree No. 3 in February and April 2019, respectively, the Republic has ensured that PDVSA and its U.S. Subsidiaries operate autonomously and free from any interference from the Interim Government. Medina Decl. ¶¶ 4, 6-7, 12; Pacheco ¶ 7.

25. The Interim Government does not exercise day-to-day control over PDVSA. While the Court concluded in *Crystallex I* that, starting in or around 2002 or 2003, and through August 2018, the prior Chávez or Maduro regimes exercised day-to-day control over PDVSA, the facts that this Court relied on concerning the relationship between PDVSA and the prior Chávez or Maduro regimes are not true of the current relationship between PDVSA and the Interim Government, beginning in January 2019 and continuing until the present:

    a. Whereas this Court found that the prior Chávez and Maduro regimes exercised "close political control" over PDVSA, *Crystallex I*, 333 F. Supp. 3d at 407, the Interim Government does not exercise and has not exercised close political control over PDVSA or its U.S. Subsidiaries. PDVSA and its U.S. Subsidiaries operate autonomously and free of interference by the Republic. Medina Decl. ¶¶ 4, 7; Medina Test., Hrg. Tr. 83:12-19 (Apr. 30, 2021);[9] Pacheco Decl. ¶¶ 12-13.

---

[9] As used herein, "Hrg. Tr." shall mean the transcript of the hearing held on April 30, 2021 in *O.I. European Group B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-mc-0290-LPS, (D. Del.) and *Northrop Grumman Ship Sys., Inc. v. Bolivarian Republic of Venezuela*, No. 1:20-mc-0257-LPS, (D. Del.).

  b. Whereas this Court found that there was "a great deal of overlap between the leadership" of PDVSA and the prior Chávez and Maduro regimes, *Crystallex I*, 333 F. Supp. 3d at 407, no such overlap exists or has existed between the Interim Government and PDVSA or its U.S. Subsidiaries. *See supra* ¶¶ 17-22.

  c. Whereas this Court found that the prior Chávez and Maduro regimes directly appointed officers and directors of the U.S. Subsidiaries, *Crystallex I*, 333 F. Supp. 3d at 407, the officers and directors of PDVSA's U.S. Subsidiaries are now appointed by their respective shareholders pursuant to their bylaws. *See supra* ¶¶ 19-21.

  d. Whereas this Court found that the prior Chávez and Maduro regimes engaged in politically motivated firings of even low-level PDVSA employees and threatened to fire the remaining employees who opposed those prior regimes, *Crystallex I*, 333 F. Supp. 3d at 407-08, the Interim Government has not hired or fired any employees of PDVSA or its U.S. subsidiaries for any reason. Nor has the Interim Government threatened to fire any such employees for any reason. Medina Decl. ¶ 11(h)-(i); Pacheco Decl. ¶ 11(g)-(h).

  e. Whereas this Court found that officials in the prior Chávez and Maduro regimes imposed material commitments on PDVSA by requiring PDVSA to acquire certain companies, *Crystallex I*, 333 F. Supp. 3d at 407, the Interim Government has not imposed any material commitments on PDVSA or its U.S. Subsidiaries and has not required them to enter into any transactions. Medina Decl. ¶ 11(d); Pacheco Decl. ¶ 12(d).

  f. Whereas this Court found that the prior Chávez and Maduro regimes dictated PDVSA's production levels and prices, *Crystallex I*, 333 F. Supp. 3d at 408-09, the Interim Government does not have and has not had any involvement in setting production levels or prices. Rather, PDVSA and its U.S. Subsidiaries operate autonomously and make their own commercial decisions. Medina Decl. ¶ 11(c); Pacheco Decl. ¶ 12(c).

  g. Whereas this Court found that the prior Chávez and Maduro regimes required PDVSA to sell oil to China, Russia at a discount and to sell oil to 17 Caribbean countries on favorable economic terms through PetroCaribe to support the foreign policy of those prior regimes, *Crystallex I*, 333 F. Supp. 3d at 409-10, the Interim Government has not forced PDVSA or its U.S. Subsidiaries to engage in any such transactions – or any transactions for that matter. Medina Decl. ¶ 11; Pacheco Decl. ¶ 12.

  h. Whereas this Court found that the prior Chávez and Maduro regimes forced PDVSA to fund "off-budget social programs," such as housing projects, that had nothing to do with PDVSA's business, *Crystallex I*, 333 F. Supp. 3d at 402, 409, the Interim Government has not forced PDVSA or its U.S. Subsidiaries to fund any social programs. Medina Decl. ¶ 11; Pacheco Decl. ¶ 12.

  i. Whereas this Court found that the prior Chávez and Maduro regimes imposed extraordinary tax and regulatory policies on PDVSA to force it to directly act on

behalf of the Republic, such as by forcing PDVSA to contribute funds to PDVSA Agricola, S.A., which subsidizes Venezuela's agriculture and industrial infrastructure sectors, to PDVSA Desarrollos Urbanos, S.A., which subsidizes Venezuelan housing projects, and to FONDEN, a social development fund, and by subjecting PDVSA to certain currency regulations, *Crystallex I*, 333 F. Supp. 3d at 402, 409, 412, the Interim Government does not impose any extraordinary tax or regulatory policies or currency controls on PDVSA and does not otherwise force PDVSA to contribute funds to any programs or entities unrelated to PDVSA's business. Medina Decl. ¶ 11; Pacheco Decl. ¶ 12.

j. Whereas this Court found that officials in the prior Chávez or Maduro regimes used PDVSA aircraft and vehicles for political and governmental business, *Crystallex I*, 333 F. Supp. 3d at 406, the Interim Government does not use the property of PDVSA or its U.S. Subsidiaries. Medina Decl. ¶ 11(a); Pacheco Decl. ¶ 12(a).

k. Whereas this Court found that the prior Chávez and Maduro regimes used PDVSA to assist those prior regimes in achieving their expropriation objectives, *Crystallex I*, 333 F. Supp. 3d at 413, neither PDVSA's *ad hoc* Board nor PDVSA's U.S. Subsidiaries have been involved in any expropriations. PDVSA's *ad hoc* Board and its U.S. Subsidiaries do not hold any expropriated property. Pacheco Decl. ¶ 12(i).

26. PDVSA, like any corporation, provides information concerning its activities to its shareholder by submitting periodic reports to the National Assembly. Medina Decl. ¶ 7.

27. PDVSA does not receive orders or directives from the Interim Government. *Id.*

28. PDVSA is not required to obtain approval from the Interim Government for routine contracts. Medina Decl. ¶¶ 7, 11; Gómez Test., Hrg. Tr. 54:12-55:12 (Apr. 30, 2021).

29. The Interim Government, PDVSA and PDVSA's U.S. Subsidiaries have their own separate sources of funding. Medina Decl. ¶ 19.

30. The Interim Government does not bypass corporate dividends and draw funds directly from PDVSA or its U.S. Subsidiaries. Medina Decl. ¶ 19.

31. PDVSA retains and pays for its own legal counsel in litigations in the United States. Medina Decl. ¶ 18.

32. While the actions of the Maduro regime are not relevant to determining the relationship between the Republic and PDVSA, the Maduro regime has no relationship

whatsoever with the PDVSA *ad hoc* Board or PDVSA's U.S. Subsidiaries. Pacheco Decl. ¶ 11. The Maduro regime has not appointed a single member of PDVSA's *ad hoc* Board or any of the directors of PDVSA's U.S. Subsidiaries. *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13. Neither the Maduro regime nor anyone affiliated with the Maduro regime exercises any rights in the shares of PDVH or any of the other U.S. Subsidiaries. *Id.* Neither the Maduro regime nor anyone affiliated with the Maduro regime has access to any assets, funds or information held by PDVSA or its U.S. Subsidiaries. Medina Decl. ¶¶ 6, 10; Pacheco Decl. ¶ 11.

33. The Maduro regime does not control any property of PDVSA in the United States, including the PDVH shares. *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13; Medina Decl. ¶ 10; Pacheco Decl. ¶¶ 11-12. The PDVH shares are not property of the Maduro regime. *Jiménez*, 2019 Del. Ch. LEXIS 288, at *13.

|  |  |
|---|---|
| | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| OF COUNSEL: | */s/ Samuel T. Hirzel, II* <br> Samuel T. Hirzel, II (#4415) <br> 300 Delaware Avenue, Suite 200 |
| Joseph D. Pizzurro <br> Julia B. Mosse <br> Kevin A. Meehan <br> Juan O. Perla <br> CURTIS, MALLET-PREVOST, <br> COLT & MOSLE LLP <br> 101 Park Avenue <br> New York, NY 10178 <br> (212) 696-6000 <br> jpizzurro@curtis.com <br> jmosse@curtis.com <br> kmeehan@curtis.com <br> jperla@curtis.com | Wilmington, DE 19801 <br> (302) 472-7300 <br> SHirzel@hegh.law <br><br> *Attorneys for Intervenor Petróleos de Venezuela, S.A.* |

Dated: November 10, 2022